*[NOT FOR PUBLICATION]*

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re: | Case No. GG 11-08748-jtg |
| MICHELLE PRACHER, | Chapter 13 |
| Debtor. | Hon. John T. Gregg |
| _____/ | |
| In re: | Case No. GG 11-05864-jtg |
| RODNEY RAY SENNEKER, | Chapter 13 |
| Debtor. | Hon. John T. Gregg |
| _____/ | |
| In re: | Case No. GG 10-05950-jtg |
| AARON JOSEPH MACLACHLAN, | Chapter 13 |
| Debtor. | Hon. John T. Gregg |
| _____/ | |

**MEMORANDUM DECISION REGARDING APPLICATIONS FOR
ALLOWANCE OF FEES AND REIMBURSEMENT OF EXPENSES**

These matters come before the court on David Andersen & Associates' First Applications for Compensation (the "Applications") filed in the above-captioned bankruptcy cases. For the reasons set forth below, the Applications will be granted in part, and denied in part.

**INTRODUCTION**

On numerous occasions, this court has scheduled hearings on fee applications due to the court's concern with expenses for copying charges of $0.25 or more per page. At these hearings, the court has adopted a "dose of practicality," especially given the relatively nominal amounts at issue in each case, and awarded administrative expenses for such copying charges upon certification by the applicant that the charges were "actual." *See Boyd v. Engman*, 404 B.R. 467, 487 (W.D. Mich. 2009) (Jonker, J.). Once an applicant has certified that the requested expense is in fact actual, the court has not revisited the issue in fee applications filed by the same applicant in other cases. Instead, the court has deferred to the applicant to adjust its requested expenses as circumstances dictate, keeping in mind the applicant's previous representation made to, and relied upon by, the court.

In two of these cases, David Andersen & Associates, P.C. (the "Applicant") filed briefs in support of its Applications before scheduled hearings.[1]  The briefs, which are virtually identical, identify in detail the basis for certain expenses sought for reimbursement in these cases, as well as other cases in which the Applicant has previously requested reimbursement of expenses.  The narrow issue before the court in these cases is whether certain costs are actual and necessary expenses pursuant to section 330(a)(1)(B) of the Bankruptcy Code.

## JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## BACKGROUND

Prior to the petition dates, the above-referenced debtors (collectively, the "Debtors") engaged the Applicant to represent them as legal counsel in a pre and post-petition capacity. Thereafter, the Debtors each filed voluntary petitions for relief under Chapter 13 of the Bankruptcy Code.  On or around the petition dates in the respective cases, the Debtors and the Applicant entered into agreements entitled Attorney-Client Agreement Supplemental Statement Pursuant to Rule 2016(b) (the "Supplemental Agreements").[2]  The Supplemental Agreements stated, in pertinent part, that:

> For additional services beyond paragraph 2, and for services exceeding those which have been paid for at the hourly rates [of $250.00 per hour for attorneys and $95.00 for paralegal/legal assistant's time], client agrees to pay $250 per hour of attorney time and $95 per hour of paralegal/legal assistant time, or a rate approved by the Court, plus costs, in addition to the minimum fee above [of $3,300.00].  Additional services to be paid for by client include, but are not limited to, motions, hearings, consultations, document scanning, copying . . . and all legal services beyond those specified in paragraph 2. . .

> Costs are to be reimbursed to attorneys and paid by client in addition to attorney fees including filing fees to the court, storage, copy and scanning costs, long distance phone calls, mail, fax charges and mileage, and all other out of pocket expenses incurred by attorney. . .

---

[1]     The Applicant filed briefs in support of its Applications in *In re Pracher*, Case No. 11-08748 and *In re MacLachlan*, Case No. 10-05950.  The Applicant did not file a brief in *In re Senneker*, Case No. 11-05864, but at the hearing the Applicant adopted by reference its arguments made in the briefs filed in the other two cases.

[2]     The Applicant attached copies of the Supplemental Agreements to its fee disclosure statement, which the Applicant timely filed pursuant to Rule 2016(b) of the Federal Rules of Bankruptcy Procedure.  It is unclear whether the Supplemental Agreements were intended to supersede or perhaps supplement a previously entered agreement. *See also* LBR 2016-2(e)(1)(A).

It is the client's responsibility to supply all necessary information prior to filing the case. In the event that additional debts are added later or if any amendment to schedules is necessary, it is disclosed and client agrees to pay $200 per amendment as an additional attorney fee plus any applicable filing fees, mailing, copy and other expenses. . .

(Supp. Agr. at ¶¶ 3-4, 17.)

Shortly after filing their petitions for relief, the Debtors each filed proposed plans of reorganization. The Debtors' plans were all confirmed by orders of this court.

Based on the dockets and the Applications, it appears as though the Debtors' bankruptcy cases were relatively straightforward, with the Debtors timely making payments and otherwise satisfying their obligations under their confirmed plans.

Post-confirmation, the Applicant filed its Applications, which requested approval of fees and expenses. In the Applications, the Applicant seeks reimbursement of expenses for postage, photocopies, mileage and "matrix mailing labels."[3] The Applications state (i) the dates of the expenses, (ii) the quantity, (iii) price, (iv) overall amount, and (v) a short explanation of the reason for the expenses.

The Applicant elected to serve the Applications pursuant to the notice and opportunity to object procedures as set forth in the Local Bankruptcy Rules. *See* LBR 9013 and 9013-1. After the time period for filing objections had lapsed, the Applicant filed certificates stating that no parties had objected to the Applications within the time set forth in the Local Bankruptcy Rules and, in effect, requesting that the court enter orders approving the Applications. Upon review of the Applications, the court decided to schedule the Applications for hearings on September 16, 2014.

On September 10, 2014, the Applicant filed a Brief in Support of Application for Compensation in the *Pracher* and *MacLachlan* cases (the "Briefs"). In its Briefs, the Applicant categorized the means by which it determined expenses for copying costs per page and mailing matrix labels. The Applicant stated that the court should consider (i) the cost of the actual paper or labels, (ii) the cost to lease or otherwise use the copy machine, including ink, and (iii) the costs associated with "general maintenance, such as operating the printers, refilling the printers, refilling the ink, and other tasks that involve a paid employee using time on the machines," as well as electricity, staples, storage space for paper, and insurance. (Br. at pp. 1-2.) In support of its Brief, the Applicant attached shipping slips for copy paper and address labels from Office Depot dated September 9, 2014. According to the shipping slips, 5,000 sheets of paper cost the Applicant $59.30, and 3,000 address labels cost the Applicant $46.05.[4]

---

[3]    "Mailing matrix labels" are 1" x 2 5/8" address labels (*i.e.*, stickers) which may be purchased in bulk. (*See* Br., Ex. B.)

[4]    These amounts included shipping and taxes. The amounts did not consider free shipping and discounts potentially offered through rewards programs. The court has not been presented with any competing documentation or other evidence and declines, in these cases, to take judicial notice (to the extent possible) of alternatives demonstrating a higher or lower cost.

The Applicant estimated its expenses for copies and mailing matrix labels in the following table:

Photocopy:

| | | |
|---|---|---|
| Paper: | $0.01 | |
| Printer lease: | $0.14-0.18 | |
| Other Costs: | | |
| Electricity/Shipping/ | | |
| Storage/Insurance/ | | |
| Staples: | | $0.05-$0.10 |
| Total: | $0.20-0.29 | |

Matrix Label:

| | | |
|---|---|---|
| Label Page: | $0.35 | |
| Printer lease: | $0.14-0.18 | |
| Other Costs: | | |
| Electricity/Shipping/ | | |
| Storage/Insurance/ | | |
| Staples: | | $0.05-$0.10 |
| Total: | $0.54-0.63 | |

(*Id*. at p. 3.)  The Applicant further explained in its Briefs that "these averages" do not account for shipping expenses, costs if purchased at the store (as opposed to online), and/or storage costs if paper and labels are purchased in bulk.  (*Id*. at p. 2-3.)  Finally, the Applicant noted that while certain commercial printing resources might be available to reduce costs, it would be somewhat cost prohibitive and perhaps inconvenient to do so.[5]  (*Id*. at p. 3.)

On September 16, 2014, the court conducted a consolidated hearing regarding the Applications.  At the hearing the Applicant appeared and presented oral argument, which the court has carefully considered.

## **LEGAL STANDARD**

Section 330 of the Bankruptcy Code provides that:

(a)(1)   After notice to the parties in interest and the United States Trustee and a hearing, and  subject to sections 326, 328, and 329, the court may award to

---

[5]     The court agrees with the Applicant.  A professional seeking reimbursement of expenses need not create inefficiencies or otherwise burden itself unreasonably in search of the absolute lowest cost available in the marketplace.  Rather, the professional need only "utilize the most economical method for necessary expenses."  (Fee Guidelines at ¶ 14.)

> a trustee, a consumer privacy ombudsman appointed under section 333, or a professional person employed under section 327 or 1103 –
>
> (A)   reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and
>
> (B)   *reimbursement for actual, necessary expenses*.

11 U.S.C. § 330 (emphasis added).

Bankruptcy courts are required to review an application for fees and expenses, regardless of whether any party in interest has filed an objection to such application. *Soloman v. Wein (In re Huhn)*, 145 B.R. 872, 875 (W.D. Mich. 1992) (Bell, J.); *In re Bush*, 131 B.R. 364, 365 (Bankr. W.D. Mich. 1991) (Stevenson, B.J.). This court has previously noted that a court's obligation to review fees and expenses is especially important in Chapter 13 cases, because debtors and creditors have little incentive to object to a professional's fees and expenses. *In re Copeland*, 154 B.R. 693, 697-98 (Bankr. W.D. Mich. 1993) (Stevenson, B.J.). As at least one court has observed, creditors, particularly those with small claims, "have the right to assume that a judge will make some effort to preserve the integrity of the Chapter 13 process by not merely signing off on fee applications by rote." *Id*. at 698 (citing *In re Patronek*, 121 B.R. 728, 731 (Bankr. E.D. Pa. 1990)); *see In re Wyche*, 425 B.R. 779, 792 (Bankr. E.D. Va. 2010); *see also In re Wildman*, 72 B.R. 700, 705 (Bankr. N.D. Ill. 1987).

The applicant has the burden of demonstrating that expenses were actual and necessary for the proper administration of the bankruptcy case before the court may allow the requested reimbursement. *See*, *e.g.*, *In re Wyche*, 425 B.R. at 794 (citations omitted). A professional person can only be reimbursed for actual and necessary expenses that are incurred by the professional on behalf of a debtor or other estate representative. *Walton v. The Dellutri Law Group (In re The Dellutri Law Group)*, 482 B.R. 642, 650 (Bankr. M.D. Fla. 2012). Ordinary expenses of a professional, which are considered overhead, include, but are not limited to, rent, utilities, secretarial time, messenger services, insurance and general office charges which are built into the professional's billing rate. *See*, *e.g.*, *In re Bank of New England Corp*., 484 B.R. 252, 278 (Bankr. D. Mass. 2012); *In re New Hampshire Elec. Co-op, Inc*., 146 B.R. 890, 903-04 (Bankr. D. N.H. 1992); *In re Ginji Corp*., 117 B.R. 983, 995 (Bankr. D. Nev. 1990).

A professional person may only charge a client for the actual amount paid by the professional for a non-overhead expense. *Id.* (citations omitted); *see* Amer. Bar Assn. Formal Op. No. 93-379. In other words, the expense must be fronted by the professional on behalf of a particular client. Any professional who collects more than the actual expense is "creating an impermissible profit center" by seeking reimbursement of expenses that do not satisfy the requirements of section 330(a)(1)(B) of the Bankruptcy Code. *In re The Dellutri Law Group*, 482 B.R. at 650; *see In re Ginji Corp*., 117 B.R. at 995 (court will not permit law firms to use expenses as "profit making center").

This court has adopted guidelines for allowance of fees and reimbursement of expenses entitled Memorandum Regarding Allowance of Compensation and Reimbursement of Expenses for Court-Appointed Professionals, as amended on October 9, 2013 (the "Fee Guidelines"). The Fee Guidelines contain limited provisions regarding reimbursement of expenses, but do not set forth "no look" expenses as some other courts have pursuant to local rule or administrative order. *See*, *e.g.*, LBR 2016-2(e)(iii) (Bankr. D. Del.) (copy expenses may not exceed 10 cents per page); Expense Reimbursement Guidelines (Bankr. M.D. Fla. June 26, 2013), http://www.flmb.uscourts.gov/announcements/archive.htm (15 cents per page); Appendix III to LBR 2016-1(e) (Bankr. D. R.I.) (20 cents per page). The Fee Guidelines are straightforward and simply require a professional to utilize the most economical method for expenses. (Fee Guidelines at ¶ 14.)

## ANALYSIS

As set forth above, in order to be entitled to reimbursement of expenses, the Applicant must demonstrate that its claimed expenses are both actual and necessary. This remains true even where a fee agreement, such as the Supplemental Agreements, expressly requires a client to reimburse a professional for certain costs. (*See* Supp. Agr. at ¶¶ 3-4, 17.)

Based upon a review of the descriptions in the Application, the Applicant's expenses satisfy the "necessary" component under section 330(a)(1)(B), as there is no dispute that the expenses were incurred for purposes explicitly related to the Debtor's bankruptcy case. Moreover, the itemization of expenses properly identifies each expense, its date incurred/paid, and a general description of the nature and purpose of the expense. (*See* Fee Guidelines at ¶ 14.)

The expenses requested for copying charges and mailing matrix labels, however, do not satisfy the "actual" component under section 330(a)(1)(B) of the Bankruptcy Code. In its Briefs the Applicant explained that its charge per photocopy is based on the cost of a blank piece of paper, $0.01, as well as the cost for the copy machine itself, which the Applicant estimated to be between $0.14 and $0.18 per copy, depending on the volume of copies per month. For purposes of this decision and in light of the lack of any evidence to the contrary, the court will allow reimbursement of $0.19 per copy for the copy machine and paper.[6]

The Applicant also explained in its Briefs that its charge per sheet of address labels is based on the cost for one blank sheet of labels, $0.35, as well as the cost for the copy machine itself, again between $0.14 and $0.18 per copy depending on the volume of copies per month. The court has reservations regarding the claimed cost per sheet of address labels, but accepts such cost in light of the lack of any evidence to the contrary. The court approaches the reimburseable nature of address labels with some concern, because, in the court's view, labels fall into the general category of office supplies. The court has difficulty discerning the difference between address labels and other office supplies such as envelopes, binder clips, letterhead, paperclips, pens and post-its, all of which the court considers overhead. Moreover, the court can only imagine the reaction of debtors (who have already agreed to pay fees in excess of $3,000) and creditors alike when they receive an invoice seeking reimbursement for stickers. However, the court is not

---

[6]   The Applicant did not submit an affidavit in support of its Applications, Briefs or attachments thereto. However, the court accepts the representations made by the Applicant in those filings and at the hearing.

inclined to investigate further given the amounts at issue and will allow reimbursement of $0.50 per copy for the copy machine and one sheet of labels in these cases.

The Applicant next contends that its costs for both photocopies and address labels are further increased due to:

> . . . general maintenance such as operating the printers, refilling the printers, refilling the ink, and other tasks that involved a paid employee using time on the machines. There are costs for electricity to run our various printers, costs associated with staples for the documents we mail, costs of additional space to store paper, and costs of maintaining insurance for all of these devices we operate. Many of these items would be difficult, if not impossible, to apportion with complete accuracy to the cost per page.

(Br. at p. 2.)

The court disagrees with the Applicant in this respect. The costs identified are without question overhead expenses that are not subject to reimbursement from this Debtor's estate, or any other estate for that matter. As set forth in numerous decisions from courts in other jurisdictions, overhead expenses are already included in the fees charged by professionals, and thus to award an additional administrative expense for such overhead would create an unfair windfall for the benefit of the professional and to the detriment of the creditors, or in cases with 100% plans, the debtors themselves.

In this case, the Applicant is seeking, and in the past has consistently been awarded, the highest "no look" fee of $3,330.00 permitted under the Fee Guidelines.[7] The Applicant's principal and his colleagues are recognized as extremely competent attorneys who provide valuable services to their clients. Nonetheless, such exceptional service does not entitle the Applicant to charge its clients for overhead under any circumstances. By its own admission, the Applicant is seeking reimbursement for (i) electricity to operate its office, (ii) a space on the floor of its office to store paper, (iii) a secretary or member of the support staff to make copies, and (iv) staples. These costs are not reimbursable expenses. Rather, they are costs incurred on a daily basis by a law firm in order to conduct operations. *See In re Glasstream Boats, Inc*., 146 B.R. 784, 785 (Bankr. M.D. Ga. 1992) (citing *In re S.T.N. Enter., Inc.*, 70 B.R. 823, 844 (Bankr. D. Vt. 1987)). The court declines to allow reimbursement for such costs in this case or any future cases, regardless of whether the expenses are sought by this Applicant or another professional. The court will therefore limit expenses for paper copies and address labels to the amounts set forth above. *See supra* at p. 6.

The court is left to wonder whether expenses claimed by the Applicant in other cases included overhead.[8] (*See* Br. at p. 1 (Applicant "has been doing so for years.").) Again, while the

---

[7]    In 2013 the highest "no look" fee under the Fee Guidelines was increased to $3,650.00, which the Applicant is qualified under the Fee Guidelines to seek, and has in fact sought, in other cases.

[8]    The court will not explore the issue further in the context of these cases, and has no basis to believe that the Applicant has attempted to create a "profit center" through reimbursement of overhead. The court would be remiss if

amounts at issue in these cases are nominal, the aggregate amount at issue in all cases over time likely is not.  It is precisely this reason that the court has expressed its concern with the reimbursement of expenses not only in these cases, but in cases involving other professionals.  This court, like others before it, emphasizes that expenses should be limited to the actual non-overhead cost incurred by a professional.

### CONCLUSION

For the foregoing reasons, the Applications are granted in part, and denied in part.  The court will enter separate orders in each case consistent with this Memorandum Decision.

---

it did not express its appreciation for the candor and honesty of the Applicant in its Briefs and at the consolidated hearing.  The Applicant could have simply (albeit inappropriately) certified its costs, but instead was forthcoming with admissions and information when it attempted to address the court's concerns.

**Signed: September 18, 2014**





John T. Gregg
United States Bankruptcy Judge